## DAVID F. WHITE *vs.* BLANCHARD BROTHERS GRANITE COMPANY.

Worcester.    January 7, 1901. — April 1, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

An abutter on a highway in a town, owning the fee to the centre of the way sub-ject to the public easements, has no ownership in the highway that is affected by the construction and maintenance thereon under Pub. Sts. c. 112, §§ 223, 224, by a quarry company with the consent of the selectmen of the town, of a freight horse railroad for the transportation of stone from the quarry of the company to a steam railroad about a mile distant for distribution to purchasers. This is the use of an easement taken when the highway was created.

The provisions of Pub. Sts. c. 112, §§ 223, 224, permitting a person or corporation to construct a railroad upon a highway for private use in the transportation of freight subject to the approval and regulation of the city or town wherein it is to be constructed, is constitutional. And where with the consent of the select-men of a town a freight horse railroad was constructed by a quarry company under the sections above named, for the transportation of stone from the quarry of the company to a steam railroad about a mile distant for distribution to pur-chasers, it was *held*, that this was not a taking of the property of the owner of the fee of the highway. The transportation of its stone over the highway by the quarry company was done by it as one of the public under proper regulations by the selectmen, and it might be better for the condition of the road and more for the interest of the public that the stone should be carried over the road on iron rails, than that the surface should be rutted by the wheels of heavily loaded wagons.

BILL IN EQUITY by an abutter on the old Boston and Hart-ford turnpike highway, so called, in the town of Uxbridge in the county of Worcester, owning the fee to the centre of the portion of said highway adjoining his land, against the Blan-chard Brothers Granite Company, a corporation engaged in the business of quarrying stone at Uxbridge, to enjoin the defend-ant from building and maintaining upon said highway and over the plaintiff's land a permanent railroad for the private use of that company in the transportation of freight only, filed August 6, 1900.

The case came on to be heard before *Morton*, J., who reserved it upon the bill and answer and agreed facts for the considera-tion of the full court, such disposition to be made of it as to that court should seem meet.

The agreed facts were as follows :

The plaintiff is and for many years has been the owner in fee of a certain parcel of land in the town of Uxbridge in the county of Worcester, situated on the southerly side of the old Boston and Hartford turnpike highway, so called, in Uxbridge, which is and has been for many years a public highway, and bounding northerly on that highway for about one hundred and thirty feet.

The plaintiff's and his predecessors' deeds describe the plaintiff's parcel of land in such a way as to make the plaintiff the owner of the fee in the highway to the centre thereof, subject to the general and ordinary rights of the public in highways.

The defendant is a corporation duly established by law, owning a stone quarry in Uxbridge about one mile west of the Worcester division of the New York, New Haven and Hartford Railroad. The larger part of the defendant's business is quarrying stone for railroad, bridge and construction purposes outside of Uxbridge, and the product of its quarry is largely transported on that railroad.

The defendant, for the purpose of facilitating the transportation of its product from its quarry to the railroad, under the provisions of Pub. Sts. c. 112, §§ 223, 224, made application to the selectmen of Uxbridge for their consent to the building of a railroad by the defendant upon and along the southerly side of the above named highway, for the use of the defendant in the transportation of freight from its quarry to the railroad, and after due notice and hearing the selectmen granted and gave their consent to the defendant to build such railroad, and ordered that it should be built on the southerly side of the highway sixteen feet northerly of the southerly line of the highway, and also ordered that such railroad should be built and operated subject to the following regulations, being the regulations material to the issue in this cause, namely:

" A.    No rails shall be used except girder rails, and the space between said rails and for eighteen inches on the outer side of each rail shall be macadamized to the approval of the selectmen.

" B.    No motive power shall be used except that of horses, and every car drawn over said highway shall be preceded, at a safe distance, by a flagman, and said car shall not be run at a speed exceeding three miles per hour.

" C.  No car shall be run over said highway between the hours of 8 and 9 A. M., 11.30 A. M. and 1 P. M., and 3.30 and 5 P. M."

The consent of the selectmen was given before the bringing of the plaintiff's bill.

No change in the grade of the highway opposite the plaintiff's premises was proposed, and none of the plaintiff's land outside of the highway is crossed or entered upon by the defendant's railroad.   The plaintiff will be damaged only so far as he may be inconvenienced and his real estate depreciated in value by having such a railroad run in the street opposite his premises; and an elm tree may be injured by the construction of the railroad.

The plaintiff never has consented to the construction of the railroad, but has protested against it.   The railroad has practically been completed between the quarry and the Worcester division, except opposite the plaintiff's premises.   The defendant has at no time paid or tendered payment for injury to the plaintiff's premises or threatened injury to the same or for the use of the highway as proposed by the defendant.

The sections of Pub. Sts. c. 112 above referred to are entitled " RAILROADS FOR PRIVATE USE " and are as follows:

" Sect. 223.   A person or corporation may construct a railroad for private use in the transportation of freight, subject to the provisions of the following section; but shall not take or use lands or other property therefor without the consent of the owner thereof.

" Sect. 224.   No such road shall be connected with the road of a railroad corporation without its consent; nor constructed across or upon a highway, town way, or travelled place, without the consent of the mayor and aldermen of the city or selectmen of the town, nor except in a place and manner approved by them. If the mayor and aldermen or selectmen consent, they shall from time to time make such regulations in regard to the motive power to be employed, the rate of speed to be run, and the time and manner of using the road over and upon such way or travelled place, as in their judgment the public safety and convenience require, and they may order such changes to be made in the track as are rendered necessary by the alteration or repair of such way.   If they allow steam-power to be used on such

road, the provisions of this chapter relating to the crossing of ways and travelled places by railroad corporations shall apply to such road and to the person or corporation constructing or operating the same."

The case was submitted on briefs to all the justices.

*W. M. Prest,* for the plaintiff.

*R. B. Dodge & W. J. Taft,* for the defendant.

KNOWLTON, J.   The railroad of the defendant corporation is to be constructed in all particulars in accordance with the Pub. Sts. c. 112, §§ 223, 224, unless the construction of such a railroad upon a public highway, the fee of which is owned by the abutting landowner, is a taking and use of land of such owner without his consent.   The selectmen of Uxbridge, in consenting to the construction of the railroad and in making regulations in regard to it, have assumed that the plaintiff has no ownership of the highway that is affected by this use of it.   Of course, if the construction of such a railroad along the road is a taking and use of the plaintiff's property without his consent, the statute, as applied to this case, is unconstitutional ; for it contains no provision for compensation.

The decision of the case must turn, therefore, on two questions : first, what rights of property has a landowner in his land which has been taken and appropriated to use as a public highway ; and second, what effect, if any, does the construction of such a railroad as this along the highway have upon these rights.   The public authorities may use a highway in any proper manner which is reasonably incident to the appropriation of it to public travel, and to the ordinary uses of a street or road under different conditions.   The owner of the fee from whom the easement is taken may use his land in any way which is not inconsistent with the paramount right of the public to use it, and this paramount right may include the laying of gas or water pipes, of sewers, and of street railway tracks, the setting of posts for the support of electric wires, or any other use of a public nature which is incident to the location and maintenance of the street.   *Callender* v. *Marsh,* 1 Pick. 418.   *Pierce* v. *Drew,* 136 Mass. 75.   *Howe* v. *West End Street Railway,* 167 Mass. 46. *Como* v. *Worcester,* 177 Mass. 543.   It is often difficult to determine whether a new use of a highway is an interference with

the right of property of the owner of the fee, which entitles him to damages; but in this Commonwealth a taking of land for a street or highway has always been given an effect which is liberal to the public in reference to different uses to which they may at any time desire to put it.    See *Howe* v. *West End Street Railway*, 167 Mass. 46, and cases cited.

If the use in this case, to which the selectmen have consented under the authority of the statute, is in its nature a public use, and is not more burdensome than other public uses which have been held to come within the possible contemplation of the authorities in laying out highways, it is not an encroachment upon the right of the plaintiff as owner of the fee.    By the facts agreed it seems to be less burdensome than ordinary electric railways, such as have become common in all parts of the State, the construction of which is held not to impose an additional servitude upon the land included in a public way.    The track and rails are not different from those of street railways, there are no posts or wires, the cars are to be propelled by horses, every car is to be preceded at a safe distance by a flagman, no car is to run at a speed exceeding three miles an hour, and the cars are allowed to be run only at certain hours of each day.

The use of a highway for the transportation of merchandise to be used by different purchasers in many places is a public use, and the defendant corporation in carrying its stone over the road is doing it as one of the public.    It may be better for the condition of the road, and more for the interest of the general public, that the products of this quarry should be transported over the road on iron rails, than that the surface should be rutted with the wheels of heavily loaded wagons.    The Legislature was well warranted in recognizing that this kind of use of a highway might be a proper public use of it, and the selectmen have kept well within the statute in prescribing regulations.

The plaintiff suffers no damage for which he is entitled to compensation.    For the changed public use of the way he is presumed to have received compensation when the way was laid out.    *Callender* v. *Marsh* and *Como* v. *Worcester, ubi supra.*    There is to be no change of grade opposite to his premises, and no action which will entitle him to damages under Pub. Sts. c. 52, § 15, or c. 49, §§ 15, 16, 68.    The case falls within the decisions

in *Callender* v. *Marsh, ubi supra.* *Purinton* v. *Somerset,* 174 Mass. 556. *Vigeant* v. *Marlborough,* 175 Mass. 459. It is not within the exception created by the statutes last above cited.

A majority of the court are of opinion that the proposed action of the defendant is authorized by the statute and by the consent of the selectmen, and that the statute, as applied to this kind of a railroad, is constitutional.

*Bill dismissed.*