## LOUISVILLE & N. R. Co. *v.* STATE.

### (*Nashville.* December Term, 1916.)

1. **RAILROADS. Construction and maintenance. Grading crossings. Statutes. Construction.**

   In view of Acts 1889, chapter 119, requiring railroads to furnish good and sufficient crossings of highways, Acts 1899, chapter 356, providing that every railroad shall grade to a level with its rails and keep in repaid every public road crossing the railroad for a distance of ten feet on each side of the track and between the rails, requires the road to be level for ten feet on each side of the rails and is not complied with by merely bringing the roadway at point of contact with the rails to the rail level. (*Post, pp.* 338-343.)

   Acts cited and construed. Acts 1889, chs. 119, 356.

   Cases cited and approved: Smith v. Washington City, 61 U. S., 135; City of Leavenworth v. Rankin, 2 Kan., 357.

   Cases cited and distinguished: Louisville & Nashville Railroad Company v. State, 128 Tenn., 172; City of Little Rock v. Citizens' Street Railway Co., 56 Ark., 28; Como v. City of Worcester, 177 Mass., 543.

2. **RAILROADS. Construction and maintenance. "Grading."**

   "Grading" includes filling as well as cutting, and technically means the reducing the earth's surface to a given line fixed as the grade and may include filling or excavating, or both (citing Words and Phrases, Grade). (*Post, pp.* 338-343).

---

### FROM SUMNER.

---

Appeal from the Circuit Court of Sumner County. —W. L. COOK, Judge.

WM. H. SWIGGART, JR., Assistant Attorney-General, for the State.

KEEBLE & SEAY, for the Railroad Co.

MR. SPECIAL JUSTICE CLARK delivered the opinion of the Court.

Plaintiff in error, Louisville & Nashville Railroad Company, was indicted in the criminal court of Sumner county for "failing to grade to a level with the rails of said railroad, and to keep in repair the public road crossing at a point near the depot of said railroad company where said railroad intersects the road leading from Hendersonville to Shackle Island, for a distance of ten feet on each side of said railroad track." There was a trial before the court and jury, a verdict of guilty and a fine of five dollars was assessed by the trial judge. A motion for a new trial was made and overruled, and plaintiff in error appealed to this court, and assigns three errors.

There is but one question involved, and that is the construction of chapter 356 of the Acts of the General Assembly of 1899, which act provides:

"That every company or corporation or person operating a line of railroad within the State of Tennessee shall be required to grade to a level with the rails of said railroad and to keep in repair every public road crossing such railroad for a distance of ten (10) feet on each side of such railroad track and between the rails thereof: Provided, That the pro-

Louisville & N. R. Co. v. State.

visions of this act shall not apply within the limits of any city, taxing district, or incorporated town.''

It is the insistence of the railroad company that, if the approach to the crossing is on an incline, the law is complied with if the crossing is graded to a level with the rails at the point of contact, and it denies that the crossing must be graded to a level with the rails horizontally for a distance of ten feet on each side of the railroad track. The State insists that the meaning of the statute is that every point on the crossing and for a distance of ten feet on each side of the tracks shall be on a level with the rails of the railroad, and that that part of the crossing lying between the rails shall also be on a level with the rails.

By the Acts of 1889, chapter 119, it is provided:

''That all persons, companies, corporations, or syndicates, owning or operating a railroad or railroads in the State of Tennessee, be required to make and furnish good and sufficient crossings on the public highways crossed by them, and keep same in lawful repair at their own expense.''

Both of the acts above referred to were before this court in the case of *Louisville & Nashville Railroad Company* v. *State,* reported in 128 Tenn. (1 Thompson), 172, 159 S. W., 601. In that case it was insisted by the railroad company that the act of 1889 was repealed by the later act of 1899. The decision of the court was against that insistence, and it was held that the act of 1899 was supplementary

of and auxiliary to the act of 1889. It was also held in that case that the word "crossing," as applied to the intersection of a common highway and a railroad and as used in the earlier act of 1889, means the entire structure including the necessary approaches to the railroad, though a part may be outside of the railroad's right of way. So it appears that before and without the act of 1899 railroad companies were required to make good and sufficient crossings on the public highways crossed by them and to keep the same in good repair, and that the act of 1899 is supplementary of and auxiliary to the former act. Construed as the railroad company would have it, the statute would add nothing to the provisions of the earlier statute of 1889. It is obvious that a good and sufficient crossing could not be provided unless the crossing be brought to a level with the rails at the point of contact with the rails, since otherwise it would be impracticable for heavily loaded vehicles to cross over the rails, and, if the later statute of 1899 be construed as the railroad company insists it should be, no additional requirement would be placed upon the railroad company from that contained in the act of 1889, and the words "for a distance of ten feet on each side of such railroad track" would mean nothing. It would be a futile requirement to provide by statute that it shall be the duty of the railroad company to grade the crossing for a distance of ten feet on each side of the track when it was already the duty of the railroad company to grade the crossing

for a much greater distance on each side of the track, unless the legislature meant that for a distance of ten feet on each side of the track the grade should be level with the rails. Plaintiff in error insists that, since the requirement of the act of 1899 is that the railroad company shall "grade to a level" with the rails, the intention of the legislature was to require the railroad company to begin at a point ten feet from the track and, by filling in, bring the surface of the earth up so that when completed the railroad iron would be level with the grade or newly made surface at the point where this newly made surface came in contact with the railroad iron, and that only the point of contact is required to be on a level with the railroad iron. The construction insisted upon by the railroad company is narrower than the language used will permit. "Grading" includes filling as well as cutting. Technically, it is the reducing of the earth's surface to a given line fixed as the grade, and may include filling or excavating, or both, as may be necessary to accomplish that object. *Smith* v. *Washington City*, 61 U. S. (20 How.), 135, 15 L. Ed., 858. In the case of *City of Little Rock* v. *Citizens' Street Railway Co.*, 56 Ark., 28, 19 S. W., 17, it is said:

"The inquiry suggested is: What is meant by 'grades?' Used in reference to streets, it has two distinct meanings. By the first, it signifies the line of the street's inclination from the horizontal; by the second, a part of the street inclined from the horizontal. Cent. Dict. That is, it sometimes sig-

nifies the line established to guide future construction, and at other times the street wrought to the line.''

In *Como* v. *City of Worcester,* 177 Mass., 543, 59 N. E., 444, it is said:

''The term 'grade,' as used in a decree laying out a street of a certain width, and prescribing the grade along its center line, refers to the physical condition of the street when its construction is complete.'' 4 Words and Phrases, p. 3142.

It has also been held that, where a person contracted with a city to grade, curb, fill, and remove the dirt from a certain street for a certain consideration per cubic yard, it was meant that the dirt should be removed from one point and placed at the other on the street in such a way as to bring the surface of the street to a certain line. *City of Leavenworth* v. *Rankin,* 2 Kan., 357; 4 Words and Phrases, p. 3142.

The act of 1899 not only provides that the railroad company shall grade to a level with the rails every public road crossing such railroad for a distance of ten feet on each side of the track, but the railroad company is also required to grade to a level with the rails of said railroad the earth or space on the crossing that is between the rails of the track. It could not be reasonably insisted that, as to that portion of the crossing between the rails, the company had complied with the act by making a surface just inside of each rail level with the rails and leaving that portion of the crossing halfway between the rails un-

filled or ungraded. The same requirement is made with reference to that portion of the crossing that is within ten feet of the railroad track on each side of the track that is made with reference to that portion of the crossing that is between the rails of the track.

In the case of *Louisville & N. R. Co.* v. *State,* supra, the court said:

"The later act of 1899 may, and under the rule of construction above quoted should, be construed to add to such earlier broadly stated requirement the later one, defining how a particular portion of the crossing shall be constructed: A specification that for a distance of ten feet on each side of the track and between the rails the crossing shall be graded to a level with the rails and thus kept in repair."

By this language it was meant that the act of 1899 added to the earlier act of 1889 a specification that defined how that portion of the crossing between the rails and for a distance of ten feet on each side of the track should be constructed, and that specification requires that railroad companies embraced in the provisions of the act of 1899 shall keep the surface or top of the public road between the rails of its track where said public road crosses the track of even grade or level with the top of the rail on the track, and that that portion of the public road that is within a distance of ten feet of the railroad on each side of the track shall be made and kept by the railroad company of even grade or level with the railroad irons at said crossing.

The intention of the legislature was to require of railroad companies to construct and keep in repair good and sufficient crossings where the tracks of the company are crossed by a public road, the purpose being to make such crossings easy of approach, and as safe as possible in cases of emergency. As before stated, the construction insisted upon by the railroad company would add nothing to the act of 1889, while the construction herein placed on the act makes it the duty of the railroad company not only to make and keep in repair the crossings as required by the act of 1889, but makes it incumbent upon the railroad company to go further and construct and keep in repair that portion of the crossing between the rails and for a distance of ten feet from the track on each side of the track as above indicated.

The circuit judge construed the act as hereinabove construed, and we are of the opinion that there is no error in the judgment of the trial court, and that judgment is affirmed.